## MONEY NEGLIGENTLY PAID BY A JUDGMENT DEBTOR IN DISREGARD OF THE CLAIMS OF CROSS-PETITIONERS.

Common Pleas Court of Cuyahoga County.

THE CITIZENS SAVINGS & TRUST CO. v. CHRISTIAN BURKHART ET AL.

Decided, October 29, 1914.

*Revivor—Different Methods of Effecting—Granting of an Order of, Within the Discretion of the Court, Notwithstanding More than One Year Has Elapsed—Weight of Evidence Between Witnesses of Equal Credibility—Issuance of Summons Not Necessary on a Cross-Petition, When.*

1. An order of revivor which was not made on motion of the successor in interest, or by supplemental petition with service upon him as the representative of the estate, or by consent of parties by an order *nisi* or conditional order, is subject to a motion to be set aside.

2. But where it appears that an application was made within a month after the validity of the original order was challenged and after it had stood for two years unchallenged, it is within the discretion of the court to grant another order upon a supplemental pleading, notwithstanding more than one year has elapsed since the death of the defendant and it is being insisted that on account of the delay the granting of such an order will be to the prejudice of intervening rights.

3. Where a cross-petitioner has obtained a lien on a fund due to the estate of a decedent, and the money is thereafter negligently paid over to the executor, the lien-holder can not be required to follow the fund, but may hold the original debtor therefor.

4. In the case of two men of equal credibility testifying as to the giving notice of such a lien—one that he personally gave the required notice, and the other denying that any such notice was given him—it will be assumed that the notice was given, for the reason that the receiving of such a notice might be easily forgotten while it is highly improbable that an honest man would testify as to a transaction which never occurred.

5. It is not necessary in Ohio that cross-petitioners, whose claims are confined strictly to the matter in issue in the petition, have

summons issued on their cross-petitions, but the summons issued on the petition is sufficient to sustain a judgment on the cross-petitions.

*W. J. O'Neil,* for plaintiff.

*Cyrus Locher,* Prosecuting Attorney, for commissioners.

*Thompson, Hine & Flory,* for the McIntosh Hardware Corporation and the Cleveland Lumber Co.

*Treadway & Marlett,* for George V. Brown.

*Blandin, Rice & Ginn,* for the Cleveland Trust Co.

FORAN, J.

Christian Burkhart in March, 1909, brought an action in the Court of Common Pleas of Cuyahoga County, Ohio, known as No. 112123, against the county commissioners of Cuyahoga county, Ohio, for $1,640.90, which amount he claimed was due him on a contract for grading and paving a county road. The answer of the commissioners averred that by the terms of the contract five per cent. of the total amount due thereunder was to be retained as a guarantee that the improvements of the road would remain in good condition for the period of three years, and that the amount so retained, $1,640.90, was, by agreement between the parties, deposited with the Euclid Avenue Trust Company, which bank failed in May, 1908.

The commissioners, by resolution, released all claim to the fund, and mailed to the plaintiff, Burkhart, the bank or pass book evidencing the deposit. The plaintiff returned the pass book and refused to release the county. The assignee of the bank offered to pay the plaintiff fifty per cent. of the claim, which offer was refused. On issue joined it was held, on November 29, 1912, that the county was liable for the whole amount deposited, with interest from the date of deposit. Neither appeal was taken nor error prosecuted by the commissioners from this finding or judgment of the court. On October 25, 1909, while the action of Christian Burkhart against the county commissioners was pending, the Citizens Savings & Trust Company brought an action, known as No. 115467, in the nature of a creditor's bill against Christian Burkhart, the

county commissioners, the county treasurer, the county auditor, and the assignee of the Euclid Avenue Trust Company, claiming it had recovered a judgment against Christian Burkhart in the common pleas court of this county, December 28, 1908; that the same was in full force and unpaid; that the defendant Burkhart had no real or personal property subject to levy on execution, and praying that the county commissioners, the county treasurer, the county auditor and the defendant Burkhart be ordered to apply to the payment of the judgment of the Citizens Savings & Trust Company any amount sufficient to satisfy the sum that might be found due from the county to Christian Burkhart, upon the determination of the issues raised in the case of Christian Burkhart against the county commissioners, known as cause No. 112123.

The Cleveland Lumber Company, George V. Brown, and the McIntosh Hardware Corporation, creditors of Christian Burkhart, were by leave of court made parties defendant, and filed answers and cross-petitions in 1909, in the case of the Citizens Savings & Trust Company against Christian Burkhart et al, and known as cause No. 115467, and asking for precisely the same relief prayed for by the plaintiff in that action.

Christian Burkhart died on or about June 11, 1910, and his wife, Susan, was appointed executrix of his estate on or about June 25, 1910.

Christian Burkhart was duly served with summons in case No. 115467, October 27, 1909, but filed no answer or other pleading in said case, although he did not die until over seven months after summons had been served upon him.

The trial and appearance dockets show this entry in cause No. 115467:

"May 10, 1911.   Death of Christian Burkhart suggested. Action revived in the name of Susan Burkhart, executrix."

Who suggested, or at whose instance the cause was revived, does not appear.  No formal written notice was filed, nor does it appear that the revivor was by consent of parties, or that the executrix was in any way notified of the revivor, and she ex-

pressly denies that she had such notice. That the death was suggested to the court, and the order or revivor made at the instance of some one interested, is self-evident, but none of counsel seem willing to assume the responsibility of having called the attention of the court to the matter.

The validity of this revivor is challenged, and a motion was filed May 19, 1913, to vacate and set aside the order of revivor by Susan Burkhart, executrix, for the reason that no notice of the same was given to her or summons issued or served upon her. If she was a party to the original action, it might be said that she had constructive notice of the revivor. This must be admitted, as it is well settled that when a person is served with summons in an action, he or she is bound to take notice of all subsequent proceedings in the action, but she was not a party to the action, and can not in any sense be charged with notice of this revivor. The county commissioners, however, did have notice that an order of revivor had been made in the action. In the case against the county commissioners, No. 112123, the action was subsequently in fact revived in the name of Susan Burkhart, executrix, on March 13, 1912, and this action has not been questioned or challenged, and its regularity will be assumed.

As bearing upon the *bona fides* of the executrix in filing the motion to vacate the order of revivor of May 10, 1911, it is significant that her counsel was also one of counsel for her husband, Christian Burkhart, deceased, and that over two years were allowed to elapse before the motion to vacate was filed.

On November 29, 1812, verdict against the county was rendered in cause No. 112123, for $2,389.37. No motion for a new trial was filed by the commissioners, and judgment was entered on this verdict December 13, 1912, and approved for payment by the county commissioners December 14, 1912, two days after the judgment was entered, and the same was paid in full to Susan Burkhart, executrix of the estate of Christian Burkhart, deceased, December 19, 1912. Evidently no time was allowed to elapse after the rendition of the verdict until the same was paid. The claim of the original petitioner, the Citizens Savings & Trust

Company, in cause No. 115467, was evidently in some way taken care of some time before the fund was paid to Susan Burkhart, executrix, for on October 26, 1912, the petition was dismissed at plaintiff's costs, leaving, however, the cross-petitioners the Cleveland Lumber Company, the McIntosh Hardware Corporation, and George V. Brown, for all purposes, plaintiffs in the action, as they did not consent to the dismissal of the petition of the original plaintiff. The action, that is, cause No. 115467, was still pending, and the rights of the cross-petitioners had been in no way determined or adjudicated when the county commissioners were served with summons in this cause, that is, No. 115-467, on the 25th day of October, 1909, and strange as it may appear, the board of county commissioners never filed an answer or other pleading in the case until May 17, 1913, when an answer was filed to the cross-petition of George V. Brown, who had caused summons to be issued upon his cross-petition, which was served on the county commissioners December 22, 1909, two years before they filed an answer thereto. No summons was issued upon the cross-petitions of the Cleveland Lumber Company or the McIntosh Hardware Corporation. The county commissioners, however, must be presumed to have had notice of their claims, as the board was served with summons in the original creditor's bill brought by the Citizens Savings & Trust Company. The dismissal of the petition of the original plaintiff did not affect the status of the cross-petitioners. The action had not abated, and even if the order of revivor of May 10, 1911, was void or voidable, the action might be revived if proper proceedings were taken to effectuate that purpose. The motion of Susan Burkhart, filed May 19, 1913, to vacate the order of revivor of May 10, 1911, came on for hearing before Babcock, Judge, during the April term, 1913; and although no disposition was made of the motion, the court, by proper order, gave George V. Brown leave to file a supplemental petition to revive the action, that is, a supplemental petition praying for an order of revivor of this action in the name of Susan Burkhart, executrix. Accordingly Brown filed such supplemental petition June 2, 1913, upon which petition summons was issued and duly

served upon Susan Burkhart, executrix of the estate of Christian Burkhart, deceased, June 5,.1913. To this supplemental petition Susan Burkhart, executrix, filed an answer June 18, 1913, averring that the petitioner Brown had knowledge of her appointment as executrix in July, 1909; that he filed a statement of his claim with her as executrix; that she filed her final account as executrix of her husband's estate January 8, 1913, and that the same was duly approved; and finally, that more than one year having elapsed since her appointment, and before the supplemental petition was filed, no order of revivor can or should be made at this time.

Three questions are presented:

1st. Is the order of revivor of May 10, 1911, void or voidable?

2d. If the order of revivor of May 10, 1911, is void or voidable, can the action be now revived as prayed for in the supplemental petition of George V. Brown?

3d. Are the cross-petitioners, or either or all of them, in cause No. 115467, entitled to the relief prayed for?

As to the first question, there can be no doubt but that the order of revivor of May 10, 1911, is at least voidable and ought to be set aside. This order was not effected or made upon the motion of Susan Burkhart, executrix of her husband's estate, or by supplemental petition with service upon her as the representative of her husband's estate, as provided in Section 11402, General Code, nor was it effected by consent of parties or by an order *nisi* or conditional order as provided for in Sections 11403, 11404 and 11405, General Code. These sections provide that the order may be made or the revivor effected on the motion of either the adverse party or the successor in interest of the party who died, and "when not made by consent, the order shall be served upon the party adverse to the party on whose motion it was made in the same manner and returned within the same time as the summons." The motion, therefore, to set aside this order of revivor, of May 10, 1911, will be granted.

The next question presented is—can the action be now revived in the name of Susan Burkhart, executrix of the estate

of Christian Burkhart, deceased, as prayed for in the supplemental petition of George V. Brown?

Service was had upon this supplemental petition, and Susan Burkhart, executrix, duly notified of its pendency, as has been stated, and she filed her answer thereto. About two years, however, had elapsed from the appointment of Susan Burkhart as executrix before the supplemental petition was filed. Section 11410, General Code, provides that, an order to revive an action against the successor of a defendant shall not be made without consent of such successor or representative, unless it is made "within one year from the time it could first have been made;" and Section 11411, General Code, provides, an order to revive an action in the name of the successor of a plaintiff may be made forthwith, but can not be made of right without the consent of the defendant after the expiration of one year from the time it might first have been made. These sections are, in effect, limitations upon the right of revivor, but by Section 11402 it is provided that, "the limitations contained in the subsequent sections of this chapter do not apply to this section." Section 11402, General Code, is practically the same as Section 5149, Revised Statutes, which reads as follows:

"A revivor may be effected by the allowance by the court or a judge thereof in vacation of a motion of the representative or successor in interest to become a party to the action, or by supplemental pleading alleging the death of a party, and naming his representative or successor in interest upon whom service may be made as in the commencement of an action; but the limitations contained in subsequent sections of this chapter do not apply to this section."

A comparison of the two sections will show that, outside of slight changes in phraseology, the sections are identical. Original Section 39 of the civil code, S. & C., 958, reads as follows:

"An action does not abate by the death, marriage or other disability of a party, or by the transfer of any interest therein during its pendency, if the cause of action survive or continue. In case of the marriage of a female party, the fact being suggested on the record, the husband may be made a party with his

wife; *and in the case of the death or other disability of a party, the court may allow the action to continue by or against his representative or successor in interest, in the name of the original party.* In the case of any other transfer of interest, the action may be continued or the court may allow the person to whom the transfer is made to be substituted in the action."

In *Paper Company* v. *Bragg,* Superior Court of Cincinati, 7 N. P., 166, it is said in the syllabus:

"To allow a revivor against a deceased party is within the discretion of the court, although more than a year has elapsed from the time the order might have been made."

In the opinion the court say, that in passing Section 5149, Revised Statutes, the codifiers distinctly refer to not only Section 39, but also to the 24th O. S., 182, and the 29 O. S., 87. In the case of *Carter* v. *Jennings,* 24 O. S., 182, the court, in the syllabus, say:

"The court has power, under Section 39 of the code, in the exercise of a sound discretion, to allow the action to be prosecuted by or against the representative or successor in interest of a deceased party. For this purpose, supplemental pleadings may be allowed and process served as in the commencement of an action."

In this case there was no motion made for a conditional order of revivor within one year from the time the suit could have been first revived, but the court held, as has been seen, that it was within the sound discretion of the trial court to allow the cause to be revived, and be prosecuted by or against the representative or successor in interest of the deceased party, by a supplemental petition or pleading.

In *Black* v. *Hill,* 29 O. S., 87, *Carter* v. *Jennings,* 24 O. S., *supra,* is approved, and the court in the syllabus say:

"The mode provided in title 13, chap. 1, of the code for the revivor of actions, is not exclusive, but the court has power, under Section 39, in the exercise of a sound discretion, to allow the action to be prosecuted by or against the representatives or successor in interest of a deceased party."

And in the case of *Pavey* v. *Pavey*, 30 O. S., 600, it is held in the syllabus, that the court is authorized under Section 39, on the application of the plaintiff and good cause shown, to allow the representative of a deceased defendant in error to be made a party to the proceeding, and to direct the case to be carried on against such representative, although more than a year may have intervened from the death of such defendant to the time of making the application.

As has been seen, that portion of old Section 39 of the Civil Code referred to in these decisions was carried into Section 5149 of the Revised Statutes, and now appears in substance in Section 11402, General Code. There can, therefore, be no question but that the court has a right to grant the prayer of the supplemental petition of George V. Brown. That this may be done, and that it is within the discretion of the court to grant the prayer of the supplemental petition of George V. Brown, is admitted by the counsel for the county, but it is insisted that because Brown unduly delayed his application, to the prejudice of intervening rights, the application should be denied. A moment's reflection will show that there is no force in this contention. On May 10, 1911, an order of revivor was made and entered by the court. The validity of this order was not questioned or challenged until May 19, 1913, over two years after it had been made and entered or allowed, at which time Susan Burkhart filed her motion as executrix to vacate it, alleging in her affidavit filed with the motion that the entry was made without her knowledge or consent, and without notice to her. If it it true, as a matter of fact, that counsel for the cross-petitioners did not, as they insist, cause this entry of May 10, 1911, to be made, they ought not to be charged with laches in that regard, for they had a right to assume the order was effected at the instance of Susan Burkhart, executrix. No one else except her and the petitioner and the cross-petitioners had any interest in the controversy, and if, as a matter of fact, the cross-petitioners did not cause this order to be made, it necessarily must have been made at the instance of Susan Burkhart, executrix. However, counsel for the executrix is just as posi-

tive that he did not, on behalf of his client, procure the allowance of this order. The fact that a motion is made to vacate it is a confession that the order remains in effect until revoked or set aside. Motions are not always in writing. In many instances, motions of this kind are made *pro forma*, the court assuming they are either made at the instance of the party asking for the order or that they are made by consent of the parties. The order may have been made and allowed upon oral motion, or by consent of parties in open court, and that fact be not noted by the court upon the trial docket or the court calendar. Counsel for the cross-petitioners can not be charged with actual notice of the death of Christian Burkhart, while counsel for the executrix of his estate must be so charged, as he appears as counsel of record for both parties, and yet he has filed an affidavit that the revivor was entered or allowed without his knowledge or consent; and as he has filed this affidavit that the revivor was entered or allowed without his knowledge or consent, the court must conclude that whoever caused the order to be made has really forgotten the circumstance. But, inasmuch as the cross-petitioner Brown filed a supplemental petition praying that the action be revived June 2, 1913, within a month after the revivor of May 10, 1911, was questioned and challenged, we can not see how it can be said that he unduly delayed or was in any way negligent in the matter. No one had a right to assume or act upon the assumption that this order of revivor of May 10, 1911, was necessarily or absolutely void. There are hundreds and perhaps thousands of revivors entered and made upon the records of our courts in precisely the same language and without the formality of a written motion, indicating at whose instance they were made or allowed, or that they were allowed by consent of parties, and no one questions their validity. As the order might have been made upon the motion of Susan Burkhart, executrix, or might have been made by consent of parties, it was not absolutely void. The court had jurisdiction in the premises, and the court had a right to make the order, and the record does not disclose a want of jurisdiction. Of course it is well settled that when it appears from the face of the record that the court did not have jurisdiction of the

person or subject-matter, such an irregularity as we find here can be inquired into, and it can be found that the order or judgment rendered was not only erroneous, but void, and of no effect. *Chapman* v. *Bolton, etc.,* 4 O. C. C. 242.

It has been frequently held, that although the decree or order of a court is reversible for error, where the record does not show affirmatively a necessary fact, yet because a court of general jurisdiction has assumed to exercise jurisdiction and to make the order, it will be presumed that notwithstanding the silence of the record, the court had a right to make the order, and it was for this reason that counsel for the executrix filed his motion to set this order aside, and supported that motion by his affidavit to the effcet that no service of summons was made upon his client, Susan Burkhart. See *Moore* v. *Starks,* 1 O. S., 369.

Where a court has jurisdiction of the subject-matter of an action, and the form of the action in which suit is brought, and the parties are before the court by proper process, its judgment in the case, though erroneous, is not void. The jurisdiction is not ousted by the erroneous exercise of the power which it confers. *Moore* v. *Robison,* 6 O. S., 302.

After this order of May 10, 1911, had stood for two years unquestioned and unchallenged, it may be suggested at least that the *bona fides* of the motion to vacate or set it aside is open to ethical criticism. The prayer of the supplemental petition of George V. Brown will therefore be granted, and the action will be revived against Susan Burkhart, executrix of the estate of Christian Burkhart, deceased; and it is further found that he is entitled to the relief prayed for in his cross-petition. It is conceded that Brown obtained an equitable lien upon the claim which Christian Burkhart, deceased, held against the county. *Dunbar* v. *Harrison et al,* 18 O. S., 24; *Cincinnati* v. *Hafer,* 49 O. S., 60.

It is also conceded that the county could not prejudice the rights of Brown by the disposition of the fund made by the county. 49 O. S., 60, *supra.*

But it is contended, with a subtlety of reasoning that does credit to the genius of counsel, that the primary liability rested upon Burkhart's esate, and that the lien attaching to Burk-

hart's claim against the county was not divested by the payment to the executrix of his estate, but followed the fund into her hands, and that Brown must look to her for relief. The prayer of Brown's cross-petition, however, is, that the county commissioners be enjoined from paying any amount that might be found to be due to Burkhart, and that they be required to appropriate from the amount found due Burkhart a sum sufficient to pay Brown's claim.

In the agreed statement of fact, it is said that counsel for the cross-petitioner, George Brown, would testify that a few days before the county commissioners paid the fund in question to the executrix, he called upon the commissioners and saw the clerk of the board; that he informed the clerk of the board that the action, No. 115467, was still pending, and that if the county commissioners paid this fund before that action had terminated and the rights of the parties had been determined, they would do so at their peril. It is also said in the agreed statement of facts that the clerk of the board of county commissioners would deny that such notice had been served upon him as clerk of the board. Under the rules of evidence, even admitting that both the gentlemen are of equal credibility, it must be held that the notice was given. Human memory is fallible. Men do forget. And while it is possible to understand that a man may have forgotten all about a transaction that took place, it is impossible to conceive that an honest and a sane man could possibly remember a transaction that never existed. Therefore it seems that the board not only knew of the existence and pendency of this action, because of the summons that had been served upon its members, but they also had direct and positive notice that the action had not terminated and that the rights of the parties had not been determined. Paying the fund under such circumstances must certainly be said to be gross negligence. To say that it was mere inadvertence would be a characterization not at all commensurate with the facts. In this connection it may be fair to say that the gentlemen who are now acting as counsel for the board of county commissioners were not acting as such at the time these transactions arose.

While the action was pending, with full knowledge of its pendency and the prayer and claim of Brown, the county paid the whole amount of Burkhart's claim against the county to the executrix of his estate. Why should Brown be required to follow the fund if he had a lien upon it in the hands of the county commissioners? By a parity of reasoning, Brown's lien could be said to follow the fund into whosesoever hands, not only the county, but the executrix, may have paid it. If Christian Burkhart's estate is insolvent, what becomes of his lien, or of what value is it? Indeed counsel for the county seem to recognize the absurdity of the contention, for they frankly say, "It may at once be candidly admitted that a due sense of caution in avoiding the possibility of future complications would have prevented payment (by the county) until the rights of the claimants had been finally disposed of; but was not the payment legal, and was not the plaintiff equally careless?" We have already answered the last question; Brown was not careless. He acted as soon as he had notice that the validity of the order of revivor of May 10, 1911, was questioned. He had a right to assume it would not be questioned, and that it had been duly entered, especially as it had stood unchallenged for two years. We are not here concerned with the relations existing between the county and Susan Burkhart, executrix of the estate of Christian Burkhart, deceased. Brown, in effect, attached the fund in the hands of the county commissioners, and has a right to look to them or to the county, and is not required to follow the fund into other hands. To so hold would destroy the very purpose and object of a creditor's bill, or even a lien by attachment.

By Section 11760, General Code, it is provided that when a judgment debtor has not personal or real property subject to levy on execution sufficient to satisfy the judgment, any equitable interest which he has in real estate or any interest he has in a money contract, claim or chose in action, due or to become due to him, or any claim he has in a judgment or order, or any money or goods or effects which he has in the possession of any person, shall be subject to the payment of the judgment "by

action." A proceeding under this section is in the nature of a creditor's bill. *Dunbar* v. *Harrison,* 18 O. S., 24, *supra.*

It is in reality in the nature of a lien. By filing the creditor's bill, he obtains preference over other creditors. *Miers* v. *Turnpike Company,* 13 Ohio, 197.

The proceeding is really a proceeding in the nature of a proceeding in aid of execution, and the judgment creditor acquires a lien on the property in question from the time of serving the notice, as provided in Section 11772, General Code. *Bank* v. *Manufacturing Company,* 67 O. S., 306.

The commencement of an action in the nature of a creditor's bill gives to the plaintiff priority over creditors of the defendant not holding specific liens upon his interest in the property in suit. *Tischler* v. *Tischler,* 21 O. C. C., 166.

And where several judgment creditors are pursuing the same equitable assets of their common debtor, they are entitled to satisfaction in the order in which their liens attached by the filing of their bills. *Miers* v. *Turnpike Co., supra.*

Within the limitations just mentioned, then, it must be held that Brown and the other cross-petitioners acquired a lien upon this fund, that is, the fund in the hands of the county commissioners for which Burkhart, in cause No. 112123, brought suit; and the county commissioners had no right and were in no way justified in disposing of the fund or paying it to Susan Burkhart, executrix, until the rights of these cross-petitioners had been determined and adjudicated.

In the case of *P. A. Geier* v. *Reliance Electric Company,* decided by this branch of the court, March 28, 1913, and found in the 14 N.P.(N.S.), 353, it was held that "a garnishee who has been served with process in two different actions and has filed answers in both, is not relieved from liability for payment of the claim in the second case by compliance with an order made in the first case for payment to the clerk of court of the amount due the judgment debtor from the garnishee, the satisfaction therefrom of the claim involved in said first case, the transmission of the remainder to the non-resident debtor, and the discharge of the garnishee from further liability."

This opinion was affirmed by the court of appeals of this county. In that case the garnishee was served with summons by both parties, and filed answers in both cases. When the first case came on for hearing the garnishee obtained an order from the court of common pleas to pay the amount due the first attaching creditor and transmit the balance to the non-resident debtor, the order of the court relieving the garnishee from further liability. But it was held that, inasmuch as the garnishee had notice of the pendency of the other action, and the claim of the other petitioner to the fund, the garnishee was not relieved from liability by the order of the court of common pleas to pay the first claim and transmit the balance to the non-resident debtor.

The next and last question presented is, are the other cross-petitioners, the Cleveland Lumber Company and the McIntosh Hardware Corporation, entitled to the relief prayed for in their cross-petitions? And this depends upon the question whether it was necessary for them to have summons issued upon their cross-petitions, and served upon the county commissioners, notifying them of the pendency of their claims.

In the case of *Southward* v. *Jamison et al*, 66 O. S., 290, it was held that, ''So long as a cross-petition in an action is strictly confined to matters in question in the petition, the summons issued on the petition would be sufficient notice to sustain a judgment rendered on the cross-petition.''

In the original action the Citizens Savings' & Trust Co., plaintiff, in effect says that it had obtained a judgment against Christian Burkhart; that there is pending in the court of common pleas a suit in which defendant Burkhart is plaintiff against the board of county commissioners, asking for judgment against the commissioners for $1,640.90 with interest; and it prays that upon the determination of the issues raised in that case, that is, cause 112123, the defendant Burkhart be adjudged to apply to the payment of the plaintiff's judgment above referred to, and interest thereon together with costs, any amount found to be due to him from the county commissioners or the Cleveland Trust Company, where the money had been deposited.

An examination of the cross-petition of George V. Brown, the Cleveland Lumber Company and the McIntosh Hardware Corporation shows that they are asking for precisely the same relief upon a precisely similar state of facts; and these cross-petitions are strictly confined to the matters in question in the petition of the Citizens Savings & Trust Company.

In the case of *Brown* v. *Kuhn*, 40 O. S., 468, this question was not directly decided, but it was expressly stated in the opinion of the court in that case that under our code there is no provision for the issuance of a summons on a cross-petition against a defendant who is already in court; that it is only needful or proper to do so when new parties are made by the cross-petition; and that, as a cross-petition, under our statute, can only ask relief touching the matters in question in the petition, there is no necessity for service of summons on parties already in court; that being there, it is their duty to examine the files and see what defenses or claims are set up by the parties to the cause with relation to the matters in controversy. It is true that these cross-petitioners could not go into the action brought by Burkhart against the county commissioners and others, and known as cause 112123, and obtain relief without service of summons upon the plaintiff and upon the defendants in that action, and for the reason that Section 11760, General Code, provides that this relief must be had "by action." But when the Citizens Savings & Trust Company began its suit in the nature of a creditor's bill, under Section 11760, General Code, and known as 115467, it did proceed "by action." It is not contended that any of the cross-petitioners who went into cause No. 115467 could obtain judgment against each other without new summons issued and notice served upon the person against whom such judgment might be claimed; but that is not the case we have here. Section 11346, General Code, provides that, "the answer or demurrer of a defendant to an answer demanding affirmative relief shall be filed on or before the third Saturday, the reply or demurrer thereto on or before the fifth Saturday, and the demurrer to the reply on or before the seventh Saturday after such answer is filed." So it will be

seen that the code authorizes a defendant to file a cross-petition asking for affirmative relief, either legal or equitable, against the plaintiff or the defendant touching the matters in question in the petition; and the statute makes no difference between plaintiffs and defendants pleading to cross-petitions. Each is given "until the third Saturday after the answer demanding affirmative relief shall be filed," not after the return day of the summons, nor after service of summons upon him. This language is significant. It presumes that every plaintiff and every defendant knows when a cross-petition is filed, and must·prepare himself to reply to the same within the time given. *Bailey* v. *Lee,* 14 Hun, 524; *1 Bates Pleading and Practice,* 589; *Draper* v. *Moore,* 2 C. S. C., 167.

Of course it must be conceded that an answer demanding affirmative relief is in effect a cross-petition. When these·cross-petitioners, that is, the Cleveland Lumber Company and the McIntosh Hardware Corporation, by leave of court, became parties in cause No. 115467, and filed their answers and cross-petitions therein, which answers and cross-petitions were confined strictly to the matters in question in the petition itself, the county commissioners and Burkhart were bound to take notice that such cross-petition had been filed. When the Citizens Savings & Trust Company began this action against Burkhart, the county commissioners and others, these defendants were called upon to answer that petition, and they were thereafter bound to take notice of all proceedings that were strictly germane thereto. Of course they were not bound to keep watch for entirely new causes of action which might be injected into the case, but so long as the cross-petitioners strictly confined their claims to the matters in question in the petition, that is, to the fund in question, and the relief sought by them was precisely the same as that sought by the petitioner, there can be no doubt that the summons issued on the petition would be sufficient to sustain a judgment on the cross-petitions. See *Southward* v. *Jamison,* 66 O. S., *supra,* page 313.

It can not be said that this holding will contravene the constitutional right of the county commissioners to have their day

in court, because they were served with summons in the case of the Citizens Savings & Trust Company, and had full notice of the claims of that plaintiff and the character of the claim made by it in case No. 115467, and if they had answered in that case and the case came to trial, they would then have full notice that other cross-petitioners had intervened, and the county would have had its day in court. The county and its commissioners were put upon guard, that parties who had precisely the same character of claim as the Citizens Savings & Trust Company might intrude into that case, and that they had a right to intrude and come into the case for the purpose of asserting any claims they might have against Burkhart, and obtaining an order in equity against him.

It therefore must be held that the cross-petitioners, the Cleveland Lumber Company and the McIntosh Hardware Corporation, are entitled to the relief prayed for in their cross-petitions, and a decree will therefore be entered for the cross-petitioners, and a journal entry prepared accordingly.